CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 2 2 2012

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **RONNIE STEVE DOOLEY,** | ) | **Civil Action No. 7:11-cv-00149** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HARTFORD ACCIDENT AND** | ) | |
| **INDEMNITY COMPANY,** *et al.* | ) | **By: Samuel G. Wilson** |
| **Defendants.** | ) | **United States District Judge** |

This is an action pursuant to the court's diversity jurisdiction by plaintiff, Ronnie Steve Dooley, against defendant, Hartford Accident and Indemnity Company ("Hartford"), seeking a declaratory judgment that his personal automobile insurance policy with Hartford affords him $200,000 in underinsured motorist coverage in connection with injuries he received in a motor vehicle accident in February of 2009 with a driver who had liability limits of $100,000.[1] Hartford has counterclaimed for a declaratory judgment that its limit of liability for underinsured motorist coverage is $100,000 per person and, consequently, that there is no underinsured motorist coverage available to Dooley for the accident. In 2003, Dooley and his wife applied with Hartford for a personal automobile policy containing personal liability and uninsured and underinsured motorist limits of $100,000 per person and $300,000 per accident. Hartford issued

---

[1] Dooley filed his original complaint in the Circuit Court for the County of Roanoke on March 1, 2011, and Hartford removed it pursuant to 28 U.S.C. §§ 1441 and 1446 with diversity jurisdiction asserted under 28 U.S.C. § 1332. Dooley is a resident of Virginia, and Hartford is a Connecticut corporation that claims its principal place of business is in Connecticut. Defendant Wilmer David Phillips, Jr. is a resident of Virginia; however, only "real and substantial," not "nominal or formal parties," should be considered for diversity purposes. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460–61 (1980) (citation omitted). Phillips has "no control of, impact on, or stake in this controversy," Lincoln Prop. Co. v. Roche, 546 U.S. 81, 92 (2005) (citation omitted), thus his citizenship is not considered for purposes of determining diversity of citizenship under § 1332 and removal under §§ 1441 and 1446. Dooley does not assert any claim against Phillips and does not request relief from him. See, e.g., Lloyd v. Travelers Prop. Cas. Ins. Co., 699 F. Supp. 2d 812, 816 (E.D. Va. 2010) (finding a tortfeasor defendant to be a nominal party in an underinsured motorist case because providers of underinsured motorist liability coverage are subrogated to the rights of the insured against the person causing the injury under Virginia law).

the policy with the requested limits and renewed it five times.  Due to a computer programming error, the declarations page for the fifth renewal—the 2008–2009 policy period when the accident occurred—specified the policy's liability limits but not its uninsured and underinsured motorist limits.  Dooley, who has three listed, insured motor vehicles, now claims that Hartford's failure to specify uninsured and underinsured limits for the fifth renewal policy created an ambiguity as to his policy's coverage limits.  He argues that due to the resulting ambiguity, the Supreme Court of Virginia's decision in <u>Virginia Farm Bureau Mutual Insurance Co. v. Williams</u>, 278 Va. 75 (2009), permits him to stack underinsured motorist coverage for each of the three vehicles, producing $200,000 in underinsurance coverage ($300,000 total less the other driver's $100,000 liability limit).  The court rejects that argument because the court finds that, here, Virginia Code § 38.2-2206(A), which provides that a policy's uninsured and underinsured motorist limits equal that policy's liability limits unless explicitly rejected by the insured, properly supplies inadvertently omitted underinsured motorist limits.  In that important respect, the case before the court is quite unlike <u>Williams</u>, which involved an internal inconsistency— conflicting limits of liability on the declarations page—that could not be harmonized by resorting to Virginia's uninsured motorist statute, which ordinarily "is as much a part of the policy as if incorporated therein." <u>Bray v. Ins. Co. of Penn.</u>, 917 F.2d 130, 132 (4th Cir. 1990) (quoting <u>State Farm Mut. Auto. Ins. Co. v. Duncan</u>, 203 Va. 440, 443 (1962)).  Accordingly, the court will enter summary judgment declaring that underinsured motorist coverage is not available to Dooley for the accident under his policy with Hartford.

## I.

In October of 2003, Dooley and his wife obtained a personal automobile insurance policy from Hartford with liability and uninsured and underinsured motorist limits of $100,000 per person and $300,000 per accident.  The Dooleys renewed their policy, effective November 1,

2004 through November 1, 2005, with the same policy limits and added a third vehicle. The Dooleys renewed their policy for each succeeding policy period through 2008–2009.[2] The declarations page for the initial policy and each succeeding renewal, except the 2008–2009 renewal, continued to specify liability and uninsured and underinsured motorist limits of $100,000 per person and $300,000 per accident. However, while the declarations page for the policy renewal period effective November 1, 2008 through November 1, 2009 specified those limits for liability coverage, it did not specify uninsured and underinsured motorist limits. Nor were uninsured or underinsured motorist limits specified elsewhere in the 2008–2009 policy documents. The policy includes a liability limits anti-stacking provision, and, using virtually identical language, an uninsured and underinsured motorist limits anti-stacking provision that states:

> The limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.
> . . .
> This is the most we will pay regardless of the number of:
> 1. Insureds;
> 2. Claims made; or
> 3. Vehicles or premiums shown in the Declarations.

(Policy 21–22, ECF No. 30-10) (emphasis removed).

On February 25, 2009, a vehicle driven by Wilmer David Phillips, Jr. struck Dooley while Dooley was driving one of his three Hartford-insured vehicles. Dooley sustained serious spinal and other injuries, forcing him to incur over $100,000 in medical and related expenses. Phillips was a named insured under a personal automobile insurance policy issued by

---

[2] Before the 2005–2006 policy period, the Dooleys removed a vehicle from and added a new vehicle to the policy.

Nationwide Mutual Insurance Company ("Nationwide") with a per person liability limit of $100,000. Dooley has filed a personal injury suit against Phillips in the Circuit Court of the County of Roanoke, and Nationwide has offered to pay its liability limit of $100,000.

In support of its motion for summary judgment here, Hartford submitted an affidavit from Bill Patton, a Hartford employee with personal knowledge of the Dooleys' policy. Patton states that a computer programming error caused the omission of the uninsured and underinsured motorist limits from the declarations page and that Hartford failed to notice that omission until Dooley commenced this suit. (Patton Aff. 2, March 26, 2012, ECF No. 30-9.) According to Patton, the Dooleys had not requested any change to their policy's uninsured and underinsured motorist limits, and it was not Hartford's intent to effect any change. (Id.) The parties have submitted a stipulation that there were no oral communications between Hartford and the Dooleys regarding the 2008–2009 policy terms and no written communications other than the delivery of policy documents to the Dooleys. (Stipulation of Uncontested Facts 1, ECF No. 30-8.)

## II.

In Williams, a declarations page specified *different* underinsured motorist limits for different vehicles, creating an ambiguity that the Supreme Court of Virginia found it was required to resolve against the insurer by stacking underinsured coverage limits. According to Dooley, it follows, based on Williams, that his policy's failure to specify *any* underinsured motorist limits, *a fortiori*, creates an ambiguity that also must be resolved against the insurer by stacking. Hartford responds that Dooley's policy, construed as a whole, clearly and unambiguously bars stacking. The court agrees with Hartford.[3]

---

[3] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

Under the Virginia Code, an insurer may not issue an automobile liability insurance policy on a "vehicle principally garaged or used in the Commonwealth" unless "it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." Va. Code § 38.2-2206(A). Unless the insured explicitly requests lower coverage, "[t]hose limits shall equal but not exceed the limits of the liability insurance provided by the policy." Id. That is, if the insured does not request other limits, uninsured and underinsured motorist limits default to the policy's liability limits. By operation of law, Virginia Code § 38.2-2206's default limits "[are] as much a part of the policy as if incorporated therein." Bray, 917 F.2d at 132 (quoting Duncan, 203 Va. at 443).[4]

Insurance policies are contracts and, in interpreting a policy, the court will determine "the parties' intent from the words they have used in the document," as it would for any other contract. Williams, 278 Va. at 80 (citations omitted). "Provisions of an insurance policy must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." Id. at 80–81 (citations omitted). Thus, anti-stacking language must be considered "in the context of other policy language" to determine whether it is ambiguous. Hostettler v. Auto-Owners Ins. Co., 744 F.

---

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "When cross-motions for summary judgment are before a court, the court examines each motion separately." Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 354 (4th Cir. 2011). Each party bears the burden of informing the court of the basis for its motion, and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

[4] The statute controls in two ways: first, it specifies minimum limits for uninsured and underinsured motorist coverage, Va. Code § 46.2-472; and second, in the absence of limits or compliance with uninsured motorists coverage limits selection procedures, underinsured and uninsured policy limits will default to the policy's liability limits, § 38.2-2206(A).

Supp. 2d 543, 546 (E.D. Va. 2010).  As the court will construe ambiguous language against the drafter, "any ambiguity regarding the stacking of coverage within a policy will be construed against an insurer." Williams, 278 Va. at 81 (citations omitted).  Consequently, Virginia courts have established that personal automobile policy limits stack unless the policy clearly and unambiguously bars stacking. Id. (citing Goodville Mut. Cas. Co. v. Borror, 221 Va. 967, 970 (1981)).

The anti-stacking language in the Dooleys' policy is not materially different from anti-stacking language found effective by the Supreme Court of Virginia. See Goodville, 221 Va. at 970 ("We conclude that the language of Goodville's policy, viz., '[r]egardless of the number . . . of motor vehicles to which this insurance applies,' is clear and unambiguous and requires the construction that stacking is not permissible.").  Consequently, Dooley does not base his argument on the language of the anti-stacking provision itself.  Rather, he bases his argument on the fact that the underinsured motorist anti-stacking provision refers the reader to underinsured motorist limits specified in the declarations page, and the declarations page inadvertently omitted the underinsured motorist limits. That argument, however, fails to account for the fact that in appropriate circumstances Virginia Code § 38.2-2206(A) supplies missing underinsured motorist limits by operation of law, setting them to equal the policy's liability limits—here, $100,000 per person and $300,000 per accident. The statutorily imposed limits are as much a part of the policy as if they been printed on the declarations page. See Bray, 917 F.2d at 132 (quoting Duncan, 203 Va. at 443) (holding that Virginia Code § 38.2-2206 is as much a "part of the policy as if incorporated therein").  That is, the statutory language controls as to the coverage provided where the policy terms are simply missing. See Bryant v. State Farm Mut. Auto. Ins. Co., 205 Va. 897, 899 (1965); Duncan, 203 Va. at 443.

Dooley relies on Williams, the most recent case decided by the Supreme Court of Virginia on the stacking of underinsured motorist limits. Williams, however, is inapposite because Williams involved conflicting underinsured motorist limits. The plaintiff in Williams was involved in an accident while riding as a passenger in a vehicle. 278 Va. at 78. The plaintiff was covered as an insured of the first class under her father's personal automobile insurance policy that covered three vehicles (none of which were involved in the accident). Id. The policy included anti-stacking language similar to the language at issue in this case, and the declarations page listed underinsured motorist limits of $250,000 per person for one of the vehicles and $300,000 per person for each of the other two. Id. at 78–79. The plaintiff sought a declaration that she was entitled to stack underinsured motorist limits under the policy for each vehicle, producing $850,000 in coverage. Id. at 79. The Supreme Court of Virginia concluded that, even against the backdrop of anti-stacking policy language, the declarations page's specification of different underinsured motorist limits left "unresolved the question whether all three separate limits for each person [applied] and, if not, which of the single separate limits for each person [was] applicable." Id. at 83. The court construed that ambiguity in favor of the insured by allowing the underinsured motorist limit listed for each of the three vehicles to be stacked, resulting in underinsured motorist coverage totaling $850,000. Id. at 83. Consequently, the case first and foremost involves conflicting declaration page limits, an unusual fact not present here.

Williams does not, and did not purport to, change Virginia law. Other courts that have applied Williams have implicitly or explicitly recognized that Williams simply involved a policy that specified different underinsured motorist limits on the declarations page. Indeed, no court applying Virginia law has confronted similar facts or even allowed stacking of uninsured or

underinsured motorist limits since <u>Williams</u> was decided.[5] The different declarations page limits

in <u>Williams</u> created an internal inconsistency that could *not* be harmonized by looking to the

Virginia Code. In that respect, this case is significantly different than <u>Williams</u>. The Dooleys'

policy contains no such internal inconsistency. It does not specify conflicting or differing limits.

---

[5] <u>Westveer v. Garrison Prop. & Casualty Ins. Co.</u>, No. 2:11cv255, 2012 WL 259700, at *5 (E.D. Va. Jan. 27, 2012) (holding that no ambiguity exists in the policy because there is a clear anti-stacking provision and consistent limits of liability for "each person" in the declarations page); <u>Dragas Mgmt. Corp. v. Hanover Ins. Co.</u>, 798 F. Supp. 2d 766, 776 (E.D. Va. 2011) ("[T]here is no internal inconsistency in the policy that would lead the court to construe the exclusion in favor of coverage as in <u>Williams</u>."); <u>Allstate Ins. Co. v. McElrath</u>, No. 01:10cv788, 2011 WL 2457869, at *3 (E.D. Va. June 15, 2011) ("The identical limits of liability set forth for each vehicle in both policies distinguish this case from . . . <u>Williams</u>."); <u>Trigo v. Travelers Commercial Ins. Co.</u>, 755 F. Supp. 2d 749, 756–57 (W.D. Va. 2010) ("Here, the reference to the declarations page creates no ambiguity because the declarations page clearly states a single 'each person' limit of liability."); <u>Hostettler</u>, 744 F. Supp. 2d at 548 (holding that unambiguous anti-stacking language restricted coverage to the "each person" limit stated in the declarations page); <u>Lloyd</u>, 727 F. Supp. 2d at 459, 461 (holding that the policy's clear and unambiguous anti-stacking language was not ambiguous in its application because underinsured motorist coverage was the same for each vehicle); <u>Camper v. Erie Ins. Exch.</u>, No. CL10-133, slip op. at 5 (Va. Cir. June 9, 2011) (holding that listing separate premiums in the declarations page does not create ambiguity or authorize stacking); <u>Bryant v. Selective Ins. Co. of the Southeast</u>, 82 Va. Cir. 188, 199–200 (2011) (holding that anti-stacking provision without coverage limits is not ambiguous because the declarations page "clearly states a single 'each person' limit of liability"); <u>Melville v. Nationwide Mut. Ins. Co.</u>, No. CL10-2216, slip op. at 2 (Va. Cir. Dec. 10, 2010) (holding that stacking was prohibited when the policy has clear and unambiguous anti-stacking language and a single policy limit for each vehicle); <u>Greer v. August Mut. Ins. Co.</u>, No. CL10-4480, slip op. at 2 (Va. Cir. Oct. 29, 2010) (holding that placing per person uninsured and underinsured motorist coverage limits in the declarations page does not make a clear and unambiguous anti-stacking provision ambiguous); <u>Clous v. Cutright</u>, No. CL10-39, slip op. at 6 (Va. Cir. Oct. 21, 2010) (finding that a statement of "[t]his is the most we will pay regardless of the number of . . . " clearly and unambiguously prohibited stacking ); <u>Collier v. Erie Ins. Exch.</u>, No. CL10-86, slip op. at 2 (Va. Cir. Sept. 27, 2010) (refusing to allow stacking because the policy had identical "per person" underinsured motorist coverage limits for each vehicle and anti-stacking language that clearly refers to bodily injury and property damage); <u>Ferrell v. Nationwide Mut. Ins. Co.</u>, No. CL10-1092, slip op. at 1 (Va. Cir. Sept. 13, 2010) (granting insurance company's motion for summary judgment because the policy was unambiguous and clearly prohibited stacking of underinsured motorist limits); <u>Davis v. Nationwide Mut. Ins. Co.</u>, No. CL10-555, slip op. at 4 (Va. Cir. Aug. 31, 2010) (prohibiting stacking because anti-stacking language was clear and unambiguous and there were consistent values of underinsured motorist limits on the declarations page); <u>Joyce v. Hayes</u>, No. CL09-833, slip op. at 1 (Va. Cir. June 25, 2010) (holding that referring the reader to a declarations page with consistent uninsured motorist limits for "each person" does not create ambiguity); <u>Patterson v. Nationwide Gen. Ins. Co.</u>, No. CL09-2805, slip op. at 1–2 (Va. Cir. Apr. 26, 2010) (holding that referring policy holder to a declarations page using the term "each person" does not create ambiguity when there are consistent coverage limits and the policy language prohibiting stacking is clear and unambiguous); <u>Salzman v. Kanchev</u>, No. CL09-1566, slip op. at 8–9 (Va. Cir. Feb. 4, 2010) (holding that referring the reader to a declarations page does not create an ambiguity and that using the term "vehicle" on the declarations page to refer to covered automobiles does not limit anti-stacking language to vehicle coverage).

Rather, the policy contains a clear anti-stacking provision, and the declarations page inadvertently omits uninsured and underinsured limits altogether. Under the circumstances, Virginia Code § 38.2-2206(A) properly supplies the policy's inadvertently omitted limits, and Hartford is entitled to summary judgment.[6]

### III.

For the reasons stated, the court will enter summary judgment declaring that Dooley is not entitled to recover from Hartford under his underinsured motorist coverage for his accident.[7]

**Enter**: June 22, 2012.

_____

UNITED STATES DISTRICT JUDGE

---

[6] Virginia Code § 38.2-2206(A) sets default underinsured motorist limits to "equal but not exceed the limits of the liability insurance provided by the policy" if not expressly rejected by the insured. If a failure to list underinsured motorist limits in a policy by itself required stacking, then a multi-vehicle automobile liability policy that failed to include any provision for underinsured motorist coverage whatsoever would, by operation of law, provide coverage that would not equal the liability limits, but rather would equal the liability limits multiplied by the number of insured vehicles. In that scenario, setting the underinsured motorist limits to equal the liability limits would always result, after stacking, in actual underinsured coverage limits that exceede the liability limits, a result at odds with § 38.2-2206(A).

[7] Hartford also requests reformation of the contract. As the court finds that stacking of underinsured motorist limits is barred by the policy as written, the court need not reach the issue of reformation and does not do so.